IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD ERDREICH,

                    Plaintiff,

          v.                                                    CIVIL ACTION
                                                                NO. 18-2290
CITY OF PHILADELPHIA, et al.,

                    Defendants.

## OPINION

**Slomsky, J.**                                                 **March 6, 2019**

## I.    INTRODUCTION

The present action arises from Plaintiff Richard Erdreich's October 30, 2016 arrest and subsequent detention at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Plaintiff alleges that the City of Philadelphia ("City") and Philadelphia Police Officer John Judge, Jr. ("Officer Judge") violated his civil rights by falsely arresting him and by denying him adequate medical care. (Doc. No. 1.)

In Count I of the Second Amended Complaint, Plaintiff alleges under Section 1983 that Officer Judge violated his Fourth and Fourteenth Amendment rights by falsely arresting him and by depriving him "of his right to be free from unreasonable seizure." (Id. ¶¶ 21-28.) In Count II, Plaintiff claims that Officer Judge falsely arrested him, and in Count III, Plaintiff claims that Officer Judge falsely imprisoned him. (Id. ¶¶ 29-35.) In Count IV, Plaintiff brings a malicious prosecution claim against Officer Judge. (Id. ¶¶ 36-39.)

Plaintiff's claims against the City of Philadelphia are contained in Counts V and VI of the Second Amended Complaint. In Count V, Plaintiff alleges violations of his Fourteenth Amendment rights under Section 1983, claiming that the inadequate medical care he received at

the CFCF was the result of the City's failure to "adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention." (Id. ¶¶ 40-44.) In Count VI, Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights under Section 1983, claiming that his false arrest and detention were the result of the City's failure to train its police officers as to how to recognize a detainee's need for medical attention. (Id. ¶¶ 45-49.)

On August 28, 2018, the City of Philadelphia filed the present Motion to Dismiss Counts V and VI of the Second Amended Complaint for Failure to State a Claim. (Doc. No. 13.) On September 7, 2018, Plaintiff filed a Response in Opposition to the City's Motion (Doc. No. 15), and on November 26, 2018, the Court held a hearing on the Motion (Doc. No. 18). The Motion is now ripe for disposition. For reasons discussed below, the City's Motion to Dismiss Counts V and VI of the Second Amended Complaint (Doc. No. 13) will be granted.

## II.    BACKGROUND

On October 30, 2016, Plaintiff Richard Erdreich was driving from his home in Hatboro, Pennsylvania to visit his mother in Philadelphia, Pennsylvania. (Doc. No. 11 at ¶ 6.) While driving in Philadelphia, Plaintiff got lost and made a wrong turn onto Fuller Street, where he suddenly saw a young girl lying in the road. (Id. ¶ 7.) Plaintiff claims that it is unclear whether he struck the girl with his vehicle or whether she fell of her own accord. (Id.)

After seeing the girl in the street, Plaintiff pulled over and waited in his car for the police and an ambulance to arrive. (Id.) When the police arrived at the scene, Philadelphia Police Officer John Judge Jr. ordered Plaintiff to exit his car, at which point Officer Judge administered a field sobriety test. (Id.) Plaintiff claims that he had not consumed any drugs or alcohol that day, but alleges that he was confused and had some difficulty walking. (Id. ¶¶ 8, 20.)

The Second Amended Complaint does not state whether Plaintiff failed the field sobriety test, but after he completed it, Officer Judge transported him to a facility for a blood test. (Id. ¶ 9.) According to Plaintiff, the blood test did not reveal any drug or alcohol use. (Id.) Notwithstanding these results, Officer Judge arrested Plaintiff, charged him with driving under the influence, simple assault, and reckless endangerment, and then transported him to the Curran-Fromhold Correctional Facility ("CFCF"). (Id.)

From the allegations in the Second Amended Complaint, it is unclear whether Plaintiff's confusion and difficulty walking persisted while he was detained at the CFCF. Plaintiff does not allege that he reported his symptoms to prison officials. Nor does he allege that he asked to see a doctor or nurse. But at some point after his arrest, someone at the CFCF recognized that Plaintiff required medical attention and he was transferred to the Aria Torresdale Hospital, where he was diagnosed with a grade II Astrocytoma, which is a malignant brain tumor. (Id. ¶ 11.) On November 4, 2016, Plaintiff underwent surgery for the brain tumor, during which physicians at Aria Torresdale Hospital discovered that Plaintiff also had a tumor on his liver. (Id. ¶ 12.) After the surgery, Plaintiff was transported back to the CFCF. (Id. ¶ 13.) At this point, no one in Plaintiff's family had been informed of his arrest, detention, or medical issues. (Id. ¶¶ 10, 14.)

On December 2, 2016, Howard Erdreich, Plaintiff's brother, discovered that Plaintiff had been arrested and called the Philadelphia District Attorney's Office to learn why Plaintiff was detained. (Id. ¶ 14.) According to Plaintiff, soon after his brother contacted the District Attorney's Office, all charges against him were dropped and he was released from prison. (Id. ¶ 15.) Plaintiff left the CFCF in a wheelchair. (Id. ¶ 16.)

On May 29, 2018, Plaintiff filed this civil rights suit against the City of Philadelphia and Officer Judge (Doc. No. 1), and on August 14, 2018, he filed a Second Amended Complaint (Doc.

No. 11). In the Second Amended Complaint, he claims that the City of Philadelphia, including Police Commissioner Richard Ross, Jr.,[1] "knew of a need to adequately train, supervise or otherwise direct police officers on assessing detainees regarding the need for medical attention." (Id. ¶ 18.) He claims that as a result of the City's alleged deliberate indifference, he experienced pain and suffering, a delay in medical treatment, exacerbation of pre-existing conditions, and extensive medical costs. (Id. ¶¶ 21-22.)

Plaintiff's allegations against the City of Philadelphia are found in Counts V and VI of the Second Amended Complaint. Count V reads as follows:

41.  Defendant City of Philadelphia failed, as a matter of policy, practice, and custom, to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention.

42.  Defendant City of Philadelphia failed to create and implement a policy for dealing with prisoners who may need for medical attention.

43.  Defendant City of Philadelphia was grossly negligent and deliberately indifferent and reckless with respect to Mr. Erdreich's need for medical attention by unreasonably delaying seeking medical assistance for Mr. Erdreich.

44.  As a direct and proximate result of Defendant City of Philadelphia's failure to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning when to seek appropriate medical assistance for detainees, Mr. Erdreich experienced pain and suffering, a delay in medical treatment, exacerbation of pre-existing medical conditions and incurred extensive medical costs.

---

[1] In the Second Amended Complaint, Plaintiff incorrectly states that the Philadelphia Police Commissioner is "Robert Ross, Jr." For clarity, the current Philadelphia Police Commissioner is Richard Ross, Jr, who has held the position since January 5, 2016. PHILADELPHIA POLICE DEPARTMENT, https://www.phillypolice.com/about/leadership/richard-ross-jr-/ (last visited: Mar. 1, 2019); see also Richard Ross Sworn in as Philadelphia Police Commissioner, 6ABC https://6abc.com/news/richard-ross-sworn-in-as-philadelphias-police-commissioner/1146862/ (Jan, 5, 2016).

(Id. ¶¶ 41-44.)  Count V does not specify which constitutional right the City is alleged to have violated.  But at the hearing held on November 26, 2018, Plaintiff's counsel represented that in Count V, Plaintiff alleges that the City violated his Fourteenth Amendment rights by failing to provide him with adequate medical care.

Count VI reads as follows:

46.   Defendant City of Philadelphia failed, as a matter of policy, practice, and custom, to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention.

47.   Defendant City of Philadelphia failed to create and implement a policy for dealing with prisoners who may need for medical attention.

48.   As such, Defendant City of Philadelphia was grossly negligent and deliberately indifferent and reckless with respect to Mr. Erdreich's Fourth and Fourteenth Amendment rights by arresting him without probable cause and detaining him due to the unlawful arrest.

49.   As a direct and proximate result of Defendant City of Philadelphia's failure to adequately discipline, train, supervise or otherwise direct its police officers, including Defendant Officer Judge, Plaintiff experienced pain and suffering, a delay in medical treatment, exacerbation of pre-existing conditions and extensive medical costs.

(Id. ¶¶ 46-49.)  At the hearing held on November 26, 2018, Plaintiff's counsel stated that in Count VI, Plaintiff alleges that the City violated his Fourth and Fourteenth Amendment rights by arresting him without probable cause and then falsely imprisoning him.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

In the present action, Defendant City of Philadelphia advances two arguments in support of its Motion to Dismiss Counts V and VI of the Second Amended Complaint. (Doc. No. 13 at 5.) First, the City argues that Plaintiff fails to plead a Monell claim under Section 1983 in either Count V or Count VI because the Second Amended Complaint contains insufficient factual allegations. Second, the City submits that Counts V and VI fail to plead Monell claims under Section 1983 because Plaintiff does not sufficiently allege conduct by a municipal policymaker. (Id.)

In Counts V and VI of the Second Amended Complaint, Plaintiff brings Monell claims against the City of Philadelphia pursuant to Section 1983. He argues that "Defendant City of Philadelphia failed, as a matter of policy, practice, and custom, to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention." (Doc. No. 11 ¶¶ 41, 46.) He also argues that he was arrested without probable cause and detained due to the unlawful arrest. As a result, Plaintiff claims that he was falsely arrested, falsely imprisoned, and then denied adequate medical care.

In relevant part, Section 1983 states the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Importantly, Section 1983 does not create substantive rights. Instead, Section 1983 is a statutory mechanism that allows persons to seek review of alleged state and local violations of federal law in federal court. In fact, the purpose of the statute "was to interpose the

federal courts between the States and the people, as guardians of the people's federal rights . . . ." Mitchum v Foster, 407 U.S. 225, 242 (1972).

As noted previously, Plaintiff brings what are known as Monell claims against the City pursuant to Section 1983, claiming that his arrest, detainment, and the delay in receiving medical attention were the result of the City's deliberate indifference to his civil rights. (Doc. No. 11. ¶¶ 40-49.) As set forth in the eponymous Monell v. Dept. of Soc. Serv. of City of New York, a municipality like Philadelphia cannot be held responsible for the acts of its employees based on the doctrine of respondeat superior; rather, a municipality can only be sued when an official policy, custom, or deliberate indifference to the rights of its citizens causes an injury to a plaintiff. 436 U.S. 658, 694 (1978). To bring a Monell claim, a plaintiff must establish (1) that a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy or custom, or the deliberate indifference to the rights of citizens. Id. at 694-95; Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

With regard to the second prong of a Monell claim, as noted above, a plaintiff must show that injury was caused by (1) official city policy, (2) city custom, or (3) the city's deliberate indifference to its constituents' civil rights. Natale v. Camden Cty Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). A policy is made when a decisionmaker with final authority to establish municipal policy issues an official proclamation, policy, or edict. Wright v. City of Philadelphia, 685 Fed. App'x 142 146 (3d Cir. 2017) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom, however, is not specifically endorsed or authorized by law. Id. Rather, custom stems from a policymaker's "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." Id. (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

Finally, deliberate indifference is rooted in government inaction, namely the failure to train. A plaintiff need not show an unconstitutional policy or custom to succeed on a failure-to-train claim; rather, the plaintiff must establish that a city's failure to train its employees "reflects a deliberate or conscious choice." Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001)). Further, a plaintiff must show that "a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997). Moreover, deliberate indifference occurs "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . ." Connick v. Thompson, 563 U.S. 51, 61 (2011). In this situation, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. As recently explained by the Third Circuit:

> A plaintiff can survive a motion to dismiss a failure-to-train claim by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Estate of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne Cty., 660 F.3d 169, 180 (3d Cir. 2011)).

In this case, as previously explained, Plaintiff brings two Monell claims against the City of Philadelphia. First, in Count V, Plaintiff alleges that the City's failure to train resulted in Officer Judge failing to provide him adequate medical care, in violation of the Fourteenth Amendment. (Doc. No. 11 ¶¶ 40-44.) Second, in Count VI, Plaintiff alleges that the City's failure to train caused Officer Judge to arrest him and detain him when he should have been taken to the hospital, in violation of his Fourth and Fourteenth Amendment rights. (Id. ¶ 45-49.) Here, the Court will address Count V and Count VI in turn. On each Count, the Court will first evaluate whether

Plaintiff has established that a constitutionally protected right has been violated. Second, the Court will determine whether the alleged violation resulted from the City's deliberate indifference. Finally, the Court will look to whether Plaintiff has sufficiently demonstrated the personal involvement of a municipal policymaker.

### A. Plaintiff Fails to Plead a <u>Monell</u> Claim in Count V of the Second Amended Complaint

In its Motion to Dismiss, the City of Philadelphia submits that Plaintiff's allegations regarding the alleged delay in medical care following his October 30, 2016 arrest are insufficient to support a <u>Monell</u> claim. (Doc. No. 13 at 5-8.) Conversely, Plaintiff contends that the allegations in Count V of the Second Amended Complaint plausibly show that the City's deliberate indifference to his medical needs resulted in the violation of his Fourteenth Amendment rights. (Doc. No. 15 at 4-8.) For the reasons discussed below, the Court agrees with the position of the City.

### 1. Plaintiff's Allegations Regarding Inadequate Medical Care do not Establish a Fourteenth Amendment Violation

In this case, the Court must first evaluate whether Plaintiff has established that the City's alleged failure to train resulted in a violation of a constitutionally-protected right. In Count V, Plaintiff claims that the City's deliberate indifference to the need to train employees like Officer Judge to recognize when a detainee requires medical attention violated his Fourteenth Amendment rights.

Claims of inadequate medical care by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Hubbard v. Taylor</u>, 399 F.3d 150, 158, 166-67 (3d Cir. 2005). To state a Fourteenth Amendment claim of inadequate medical care, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs. <u>City of Revere v.</u>

Mass. Gen. Hosp., 463 U.S. 239, 243-44 (1983); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976) (holding that the Eighth Amendment is violated by "deliberate indifference to serious medical needs of prisoners").[2]

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citations omitted). Additionally, a serious medical condition is one for which the denial of treatment causes "unnecessary and wanton infliction of pain" or permanent disability or loss. Id.

"Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'"[3] Natale, 318 F.3d at 582 (quoting Nicini v. Mora, 212 F.3d 798, 811 (3d Cir. 2000)). Establishing deliberate indifference requires demonstrating that a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "Where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care, the deliberate indifference standard has been met."

---

[2]  The United States Supreme Court has held that the Fourteenth Amendment "affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere, 463 U.S. at 244). Accordingly, the Third Circuit Court of Appeals has applied Eighth Amendment convicted prisoner cases to evaluate whether a claim for inadequate medical care by a pretrial detainee is sufficiently plausible under the Fourteenth Amendment. See, e.g., Lenhart v. Pennsylvania, 528 Fed. App'x 111, 115 (3d Cir. 2013).

[3]  The deliberate indifference standard necessary to establish an inadequate medical care claim under the Fourteenth Amendment is not the deliberate indifference standard, addressed infra, necessary to establish a Monell claim under Section 1983.

Lanzaro, 834 F.2d at 346-47 (internal citations and quotation marks omitted). The Third Circuit has found that the deliberate indifference standard is satisfied on an inadequate medical care claim:

> [W]hen prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment.

Whooten v. Bussanich, 248 Fed. App'x 324, 326-27 (3d Cir. 2007).

Here, Plaintiff has not sufficiently alleged a constitutional violation based on inadequate medical care. While Plaintiff's medical condition appears to have constituted a serious medical need, he has not shown that Officer Judge or a prison official exhibited deliberate indifference to that need. For one, there are no allegations that Plaintiff ever requested, but was denied medical treatment at the CFCF. Nor does the Second Amended Complaint set forth facts to show that Plaintiff reported his symptoms to Officer Judge or a prison official. Aside from alleging that he exhibited signs of confusion and experienced some difficulty walking at the time of his arrest, Plaintiff has not pled facts that demonstrate that Officer Judge or a prison official knew that Plaintiff faced a substantial risk of serious harm while detained at the CFCF. Moreover, Plaintiff has not pled any facts that demonstrate that the alleged delay in his medical care was for non-medical purposes.

Deliberate indifference is more than an inadvertent failure to provide medical care. Estelle, 429 U.S. at 105. It requires "obduracy and wantonness . . . [,] which has been likened to conduct that included recklessness or a conscious disregard of a serious risk." Wilson v. Jin, 698 Fed. App'x 667, 671 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Absent such allegations, Plaintiff cannot plead a plausible violation of his Fourteenth Amendment rights.

### 2. Plaintiff has Failed to Plead Facts Sufficient to Show that the City was Deliberately Indifferent to his Civil Rights in Count V

Even if the Second Amended Complaint contained allegations sufficient to show a violation of a constitutionally-protected right, Plaintiff has not demonstrated that his injuries were the result of the City's failure to train. In support of his failure-to-train <u>Monell</u> claim, Plaintiff alleges that he exhibited some confusion and experienced some difficulty walking when Officer Judge arrested him. He claims that because the blood test showed that his symptoms were not the result of intoxication, Officer Judge or prison officials should have recognized that he needed medical attention. But instead, he was arrested and detained, and did not receive medical treatment for several days.

There are no allegations that Plaintiff reported his symptoms to Officer Judge or a prison official. Nor are there allegations that Plaintiff asked to see a doctor or a nurse but was denied care. Further, the Second Amended Complaint does not state whether Plaintiff's symptoms persisted at the CFCF or how long treatment was delayed. Plaintiff only alleges that he was arrested and detained on October 30, 2016 and that his surgery occurred on November 4, 2016. No facts are alleged that show what happened in the interim or before he was transported to the hospital.

As noted above, for a plaintiff to establish deliberate indifference in a failure-to-train claim, he must show "a municipal actor disregarded a known or obvious consequence of his action." <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 410 (1997). Plaintiff has not done this. He has not shown that Officer Judge was on notice that he required immediate medical attention. Although Plaintiff alleged that Officer Judge saw that he was experiencing confusion and difficulty walking, it is not clear how Officer Judge, who is not a trained physician, should have known that Plaintiff had a brain tumor and required surgery.

In his Response in Opposition to the City's Motion to Dismiss, Plaintiff relies on Wichterman v. City of Philadelphia, No. 16-5796, 2017 WL 1374528, at *1 (E.D. Pa. Apr. 17, 2017). In Wichterman, the police arrested a man for driving under the influence. The man then admitted that he was a heroin addict and had been using heroin. Id. After the man was detained, several municipal employees, including a trained nurse, saw that the man was starting to experience symptoms consistent with heroin withdrawal, but placed him in a cell, untreated and unmonitored. Id. After he was found unresponsive later that night, the man was taken to the hospital and pronounced dead. Id. The administrator of the man's estate then filed a failure-to-train claim against the City of Philadelphia, which the City sought to have dismissed. Id. The Court denied the City's motion, and found it significant that the officers and prison officials who came in contact with the man were on notice that he was a heroin addict and was experiencing withdrawal, but still failed to provide medical attention. Id. at *3.

The allegations in this case do not rise to the level of those pled in Wichterman. For one, in Wichterman, the officers, officials, and the nurse were on notice that the detainee was a heroin addict and was experiencing withdrawal. They knew of the specific ailment from which the detainee suffered, but still failed to do anything. Essentially, they decided to disregard a known and obvious consequence of their actions. Here, however, Officer Judge only knew that Plaintiff was experiencing some confusion and difficulty walking, both of which could be caused by a whole host of issues that do not require immediate medical attention. Further, the administrator of the detainee's estate in Wichterman alleged that the detainee was given a medical examination by a nurse with medical training. No such allegations exist here. Plaintiff only alleges that one person witnessed his symptoms: Officer Judge, who has no medical training and had little reason

to jump to the conclusion that Plaintiff had a brain tumor.  For these reasons, Plaintiff's reliance on Wichterman is unavailing.

In the same vein, Plaintiff's reliance on Rodriguez v. City of Philadelphia, No. 14-7362, 2015 WL 4461785, at *1 (E.D. Pa. July 21, 2015) is misplaced.  In Rodriguez, a prison inmate broke his arm by slipping on water from a malfunctioning pipe.  Id.  The next day, he was taken to the hospital, where his physician told prison officials that he required a cast in order to heal properly.  Id.  Notwithstanding this advice, the prison officials forbade the plaintiff from getting a cast because it violated prison policy.  Id.  On several occasions, the plaintiff put in requests for a cast to the prison and his medical provider, but he was denied over and over again.  Id.  As a result, the plaintiff suffered great pain and a permanent deformity.  In denying the City's motion to dismiss in Rodriguez, the court relied on the fact that the officials at the prison were on notice that the plaintiff would suffer pain and injury if he was not provided a specific course of medical treatment, but still chose to deny him care.  Id. at *4.  In short, unlike Officer Judge in this case, the officials in Rodriguez disregarded a known or obvious consequence of their actions.

Wichterman and Rodriguez both involve situations where municipal actors knew that a detainee or a prisoner had a medically documented risk or issue that put the municipal actors on notice of the consequences of their actions.  Here, though, Plaintiff did not report his symptoms to Officer Judge or the CFCF.  He did not ask to see a doctor or a nurse.  Other than alleging that he experienced a few symptoms that can be attributed to a wide range of issues that do not require medical attention, Plaintiff has not alleged that his injuries were the product of a deliberate choice to ignore known or obvious consequences of an action.

Moreover, as emphasized by Defendant, the Second Amended Complaint does little more than "parrot[] the legal standard for municipal liability without pleading any facts that support his claim." (Doc. No. 13 at 7.) In Count V, Plaintiff makes the following allegations:

41. Defendant City of Philadelphia failed, as a matter of policy, practice, and custom, to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention.

42. Defendant City of Philadelphia failed to create and implement a policy for dealing with prisoners who may need for medical attention.

43. Defendant City of Philadelphia was grossly negligent and deliberately indifferent and reckless with respect to Mr. Erdreich's need for medical attention by unreasonably delaying seeking medical assistance for Mr. Erdreich.

44. As a direct and proximate result of Defendant City of Philadelphia's failure to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning when to seek appropriate medical assistance for detainees, Mr. Erdreich experienced pain and suffering, a delay in medical treatment, exacerbation of pre-existing medical conditions and incurred extensive medical costs.

(Doc. No. 11 ¶¶ 41-44.)

These allegations stand in stark contrast to those found to be sufficient in the recent case, Estate of Roman v. City of Newark, 914 F.3d 789 (3d Cir. 2019). There, Newark police officers forcibly entered and searched the apartment of Adriano Roman's girlfriend and arrested Roman after they found drugs in a common area that was shared by multiple tenants. Id. at 793-94. The New Jersey Supreme Court found the search to be unlawful and the charges filed against Roman were dropped. Id. at 794. Thereafter, Roman filed a Section 1983 claim against the City of Newark, claiming, among other things, that Newark failed to adequately train its police officers with respect to the requirements of the Fourth Amendment. Id. at 795. On appeal, the Third Circuit held that Roman pled facts sufficient to establish a failure-to-train claim:

> We conclude that the allegations regarding Newark's failure to train, supervise, and discipline are strong enough to survive a motion to dismiss. Among them are: a failure to train officers on obtaining a search warrant, and on issuing truthful investigative reports; a failure to supervise and manage officers; and a failure to discipline officers, first by refusing to create a well-run Internal Affairs Department, and second by inadequately investigating, if investigating at all, citizens' complaints regarding illegal search and seizure. The result was a complete lack of accountability and of record keeping, leading to a culture in which officers knew there would be no professional consequences for their actions.

Id. at 800-01 (internal citations and quotation marks omitted). In contrast, the allegations advanced by Plaintiff in this case simply paraphrase the legal standard for a deliberate indifference claim. While a court at the motion to dismiss stage is required to accept as true all of the allegations in the complaint, it "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Thus, absent factual support, Count V cannot withstand the City's Motion to Dismiss.

Equally fatal, Plaintiff fails to allege conduct by a municipal policymaker. In the Second Amended Complaint, Plaintiff makes a single mention of a municipal policymaker:

> Defendant City of Philadelphia, including the Philadelphia Department of Prisons, the Philadelphia Police Department, Police Commissioner Robert Ross Jr. and/or his predecessor and/or subordinates of the Police Commissioner with responsibility for training, knew of a need to adequately train, supervise, or otherwise direct police officers on assessing detainees regarding the need for medical attention.

(Doc. No. 11 ¶ 18.) Plaintiff does not allege that Commissioner Ross was on actual or constructive notice that police officers required training on how to detect whether an arrestee requires medical attention. Nor does Plaintiff allege that Commissioner Ross made a deliberate choice to not require training in this area.

A Monell claim will only survive dismissal if it "allege[s] conduct by a municipal decisionmaker." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). A complaint must "link the alleged offending policies or customs to anyone . . . who had policy-making authority."

Rees v. Office of Children and Youth, 473 Fed. App'x 139, 143 (3d Cir. 2012). The Third Circuit has explained that a plaintiff is obligated to "plead knowledge of such directives by a municipal decisionmaker, such as the Mayor or Police Chief." McTernan, 564 F.3d at 658-59. Only where "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violates citizens' constitutional rights . . . can the city . . . be deemed deliberately indifferent if the policymakers choose to retain that program." City of Canton, Ohio v. Harris, 489 U.S. 378, 395 (1989).

In McTernan, the Third Circuit rejected a Plaintiff's allegations where the complaint simply paraphrased Section 1983. McTernan, 564 F.3d at 659. Likewise, in this case, Plaintiff has failed to plead anything more than legal conclusions. He does not allege any facts to establish that Commissioner Ross was on actual or constructive notice that an omission in the police training program caused Plaintiff's injuries. As noted above, Plaintiff only alleges that Commissioner Ross and other officials "knew of a need to adequately train, supervise or otherwise direct police officers on assessing detainees regarding the need for medical attention." (Doc. No. 11 ¶ 18.) This allegation is nothing more than a legal conclusion that paraphrases the failure-to-train standard for a Section 1983 claim. This is not enough. "[T]he mere invocation of the name of a policymaker in addition to a boilerplate recitation of the legal standard is insufficient to state a plausible claim and survive a motion to dismiss." Thomas v. City of Chester, No. 15-3955, 2016 WL 1106900, at *4 (E.D. Pa. Mar. 21, 2016).

Further, compare this single allegation with those pled in Estate of Roman. There, the plaintiff pointed to a consent decree between the United States and the City of Newark, wherein Newark acknowledged Fourth Amendment violations by the police department and committed to investigating police misconduct, such as that alleged in the complaint. Estate of Roman, 914 F.3d

at 800. Then, Plaintiff pointed to a newspaper article in which the head of the local police union stated that he had not been trained on Fourth Amendment requirements in twenty years. Id. From those two points, the plaintiff successfully established that municipal policymakers in Newark were on notice that the police training program was inadequate with respect to the Fourth Amendment, but made a deliberate choice to retain the program. Here, however, Plaintiff only advances a single legal conclusion about Commissioner Ross without any factual allegations to support it. Without more, Plaintiff fails to state a Monell claim.

As a result, Plaintiff has failed to plead facts sufficient to show that the City was deliberately indifferent to his constitutional rights. For that reason, and because Plaintiff has not established a violation of a constitutionally-protected right, the Court will grant the City's Motion to Dismiss Count V of the Second Amended Complaint.

## B. Plaintiff Fails to Plead a Monell Claim in Count VI of the Second Amended Complaint

In its Motion to Dismiss, the City of Philadelphia attacks the contention that the circumstances surrounding Plaintiff's October 30, 2016 arrest support a Monell claim. (Doc. No. 13 at 4-8.) Plaintiff disagrees. For his part, he argues that the facts alleged in Count VI of the Second Amended Complaint plausibly show that the City's failure to train police officers resulted in a violation of his Fourth and Fourteenth Amendment rights. (Doc. No. 15 at 4-8.) For the reasons discussed infra, the Court is persuaded by the City's arguments.

### 1. Plaintiff's Allegations Regarding His Arrest and Detention Do Not Establish Fourth or Fourteenth Amendment Violations

As above, the Court must first evaluate whether Plaintiff has established that the City's alleged failure to train resulted in a violation of a constitutionally-protected right. In Count VI, Plaintiff alleges that the City's deliberate indifference to the need to train employees like Officer

Judge to recognize when a detainee requires medical attention resulted in his false arrest and imprisonment in violation of the Fourth and Fourteenth Amendments.

To recap, on October 30, 2016, Plaintiff got lost in Philadelphia and made a wrong turn on Fuller Street, where he saw a young girl in the road. (Doc. No. 11 ¶ 7.) The Second Amended Complaint states that it was unclear whether Plaintiff hit the girl or whether she fell of her own accord. (Id.) In any event, Officer Judge arrived on the scene and gave Plaintiff a field sobriety test. (Id. ¶ 8.) The Second Amended Complaint does not state whether he passed or failed the test. Next, Officer Judge took Plaintiff for a blood test, which showed that Plaintiff had no drugs or alcohol in his system. (Id. ¶ 9.) Nevertheless, Officer Judge arrested Plaintiff and charged him with driving under the influence. He also charged Plaintiff with reckless endangerment and simple assault.

A claim for false arrest under Section 1983 is rooted in the Fourth Amendment guarantee against unreasonable seizure. See U.S. Const. amend. IV. To succeed on a false arrest claim under Section 1983, a plaintiff must demonstrate that the officer lacked the probable cause for the arrest. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Frazier v. City of Philadelphia, No. 18-827, 2018 WL 1093314, at *1 (E.D. Pa. Feb. 28, 2018) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

In determining whether probable cause existed for an arrest, a district court applies an objective standard based on "'the facts available to the officers at the moment of the arrest.'" Barna v. City of Perth Amboy, 42 F.3d 809, 820 (3d Cir. 1994) (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964)). Notably, the officer only needs some reasonable basis for the arrest "as to any offense

that could be charged under the circumstances." Barna, 42 F.3d at 819 (citing Edwards v. City of Phila., 860 F.2d 568, 575-76 (3d Cir. 1988)). Thus, "as long as probable cause existed as to any single offense that could have been charged under the circumstances, an arrest is deemed to be supported by probable cause." Basile v. Township of Smith, 752 F. Supp. 2d 643, 653 (W.D. Pa. 2010) (citing Barna, 42 F.3d at 819).

Here, Plaintiff has not demonstrated that Officer Judge lacked probable cause to arrest him for reckless endangerment[4] or simple assault.[5]  In the Second Amended Complaint, Plaintiff alleges that it was unclear whether he hit the girl on the street with his car or whether she fell into the road by herself.  (Doc. No. 11 ¶ 7.)  At the time of the arrest, Officer Judge observed a girl lying injured in the street.  He also saw a confused man, the Plaintiff, in a nearby car who did not know whether he hit the girl with his vehicle.  A reasonable person with those facts and in Officer Judge's position would have a reasonable basis for believing that Plaintiff committed the crimes of reckless endangerment and simple assault by hitting the girl with his car.  Significantly, "the standard for probable cause turns not on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." Mazza v. Tredyffrin Twp., No. 15-4245, 2016 WL 270220, at *2 (E.D. Pa. Jan. 21, 2016) (quoting Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989)).  Consequently, in this case, whether Plaintiff actually hit the girl is immaterial.  What is material is the fact that Plaintiff has not established that Officer Judge did not reasonably believe that Plaintiff could have hit the girl at the time of the

---

[4]  Under Pennsylvania law, a person is guilty of reckless endangerment "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa. C.S.A § 2705.

[5]  Under Pennsylvania law, a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another . . . ."  18 Pa. C.S.A § 2701(a).

arrest.  To the contrary, the allegations in the Second Amended Complaint support the fact that Officer Judge had probable cause to arrest Plaintiff for reckless endangerment and simple assault.

Plaintiff has, however, pled facts sufficient to show that Officer Judge lacked probable cause to arrest him for driving under the influence.  Although Plaintiff may have exhibited signs of intoxication, Officer Judge did not arrest Plaintiff until after the blood test, which Plaintiff alleges showed that he had no drugs or alcohol in his system.  Thus, at the time of the arrest, the facts and circumstances within Officer Judge's knowledge were insufficient for a reasonable person to believe that Plaintiff had been driving under the influence.

In any event, although Plaintiff has demonstrated that Officer Judge lacked probable cause to arrest him for driving under the influence, he has not established a violation of a constitutionally-protection right because probable cause existed to arrest him on reckless endangerment and simple assault.  As noted above, a false arrest claim under Section 1983 cannot survive if "probable cause existed as to any single offense that could have been charged under the circumstances."  Basile, 752 F. Supp. 2d at 653.  As a result, Plaintiff has not pled facts sufficient to show a violation of a his Fourth Amendment rights by the City of Philadelphia.

Plaintiff also claims that his false imprisonment at the CFCF after the arrest violated his Fourteenth Amendment rights.  (Doc. No. 11 ¶¶ 46-49.)  A false imprisonment claim under Section 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process.  Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).  Relevant here, an arrest based on probable cause cannot become the source of a claim for false imprisonment.  Id.; see also Rosembert v. Borough of East Lansdowne, 14 F. Supp 3d 631 (W.D. Pa. 2014) (finding that a plaintiff's claim for false imprisonment and false arrest failed where probable cause existed for the arrest).  Thus, in this case, Plaintiff has not stated a Fourteenth

Amendment violation with respect to false imprisonment because Officer Judge had probable cause to arrest Plaintiff for reckless endangerment and simple assault.

**2. Plaintiff has Failed to Plead Facts Sufficient to Show that the City was Deliberately Indifferent to his Civil Rights in Count VI**

Even if Plaintiff alleged facts sufficient to plausibly show a violation of a constitutionally-protected right, Plaintiff has not shown that his injuries were the result of the City's failure to train.

Plaintiff's allegations in Count VI are nearly identical to those in Count V:

46. Defendant City of Philadelphia failed, as a matter of policy, practice, and custom, to adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention.

47. Defendant City of Philadelphia failed to create and implement a policy for dealing with prisoners who may need for medical attention.

48. As such, Defendant City of Philadelphia was grossly negligent and deliberately indifferent and reckless with respect to Mr. Erdreich's Fourth and Fourteenth Amendment rights by arresting him without probable cause and detaining him due to the unlawful arrest.

49. As a direct and proximate result of Defendant City of Philadelphia's failure to adequately discipline, train, supervise or otherwise direct its police officers, including Defendant Officer Judge, Plaintiff experienced pain and suffering, a delay in medical treatment, exacerbation of pre-existing conditions and extensive medical costs.

(Id. ¶¶ 46-49.) Essentially, Plaintiff alleges that he was only arrested for driving under the influence because Officer Judge was not properly trained on how to detect when a detainee requires medical attention.

Plaintiff's failure-to-train claim fails for the same reasons as those set forth above. For one, Plaintiff has failed to plead that a municipal actor disregarded a known or obvious consequence of his actions. Although Plaintiff alleged that Officer Judge saw that he was confused and had difficulty walking, this is not enough to put Officer Judge on notice that Plaintiff had a

brain tumor and needed to be taken to a hospital. Additionally, Plaintiff has done little more than parrot the legal standard necessary to plead a <u>Monell</u> claim. Absent sufficient factual support, Count VI cannot survive.

Further, as above, Plaintiff has not sufficiently alleged conduct by a municipal decisionmaker. There is only one reference in the Second Amended Complaint to a municipal decisionmaker. In Paragraph 18, Plaintiff claims that Police Commissioner Ross "knew of a need to adequately train, supervise, or otherwise direct police officers on assessing detainees regarding the need for medical attention." (Doc. No. 11 ¶ 18.) Apart from this bare recitation of the legal standard of a failure-to-train claim, the Second Amended Complaint is devoid of any facts that show that Commissioner Ross knew that there was an alleged omission in the police training program but made a deliberate choice to retain the program.

For these reasons, Plaintiff has not established that the City was deliberately indifferent to his constitutional rights. Nor has Plaintiff demonstrated the violation of a constitutionally-protected right. Consequently, he has not pled a <u>Monell</u> claim in Count VI and the Court will grant the City's Motion to Dismiss.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant City of Philadelphia's Motion to Dismiss Counts V and VI of the Second Amended Complaint. (Doc. No. 13.) Counts I-IV will remain.