THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD ERDREICH,<br><br>                    Plaintiff,<br><br>      v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>                    Defendants. | CIVIL ACTION<br>NO. 18-2290 |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................................3

II.     BACKGROUND ...............................................................................................................7

III.    DIFFERENCES BETWEEN THE SECOND
        AND THIRD AMENDED COMPLAINTS ...................................................................10

IV.     STANDARD OF REVIEW ...............................................................................................15

V.      ANALYSIS ......................................................................................................................17

        A.      Undue Delay ...........................................................................................................17

        B.      Futility......................................................................................................................18

                1.      COUNT I:  Violation Under 42 U.S.C. § 1983 (False Arrest for DUI
                        and Unreasonable Seizure);  Plaintiff v. Defendant Judge........................18

                2.      COUNT II:  Violation Under 42 U.S.C. § 1983 (False Imprisonment
                        for Arrest of Plaintiff Without Probable Cause for DUI, Simple Assault,
                        and REAP);  Plaintiff v. Defendant Judge .................................................21

                3.      COUNT IV:  Violation Under 42 U.S.C. § 1983 (Malicious Prosecution
                        For All Three Criminal Charges);  Plaintiff v. Defendant Judge...............23

                4.      COUNT V:  Violation Under 42 U.S.C. § 1983 (Monell Claim);
                        Plaintiff v. The City of Philadelphia .........................................................24

a.   Plaintiff's First Claim:  The City of Philadelphia Has Unlawful Policies or Customs Regarding When to Provide Medical Care to Detainees and a Failure to Train Police Officers to Arrest Based on Probable Cause ............................................................................26

b.   Plaintiff's Second Claim:  The City of Philadelphia is Deliberately Indifferent to the Need to Train Police Officers and Prison Employees on When to Seek Medical Care for Detainees ............28

c.   Plaintiff's Third Claim:  The City of Philadelphia is Deliberately Indifferent to the Need to Implement Procedures to Address the Serious Medical Needs of Persons Detained by Police Officers and Prison Employees...................................................................33

C.   Prejudice to Defendant..............................................................................36

VI.   CONCLUSION..............................................................................................37

## OPINION

**Slomsky, J.**                                                   **April 16, 2020**

## I.    INTRODUCTION

This action arises from Plaintiff Richard Erdreich's ("Plaintiff") October 30, 2016 arrest and subsequent detention at the Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania.   On May 29, 2018, Plaintiff filed a Complaint against Defendants City of Philadelphia ("the City") and Officer John Judge, Jr. ("Defendant Judge" or "Judge") (collectively "Defendants").    In this original Complaint, filed pursuant to 42 U.S.C. § 1983 ("§ 1983"),[1] Plaintiff alleges five claims in total against Defendant Judge and the City of Philadelphia:  1) False Arrest for driving under the influence ("DUI") and Unreasonable Seizure against Defendant Judge (Count I);  2) False Arrest for DUI against Defendant Judge (Count II);  3) False Imprisonment for Arresting Plaintiff Without Probable Cause for DUI, Simple Assault, And Recklessly Endangering Another Person ("REAP") against Defendant Judge (Count III);  4) Malicious Prosecution against Defendant Judge (Count IV); and 5) a Monell claim against the City of Philadelphia for failing to adequately train, supervise, or otherwise direct its police officers regarding a detainee's need for medical attention (Count V).

To fully understand the matter now before the Court, which is essentially a Motion to File a Third Amended Complaint ("TAC") by adding allegations to the Second Amendment Complaint ("SAC"), a detailed outline of the procedural history of this case is necessary.  On July 10, 2018,

---

[1]  In relevant part, § 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Defendant filed a Motion to Dismiss the [original] Complaint (Doc. No. 4). On July 24, 2018, Plaintiff responded by filing an Amended Complaint (Doc. No. 6).[2] When Plaintiff realized that a page was inadvertently omitted from the Amended Complaint, he filed the SAC. (Doc. No. 11.) In the SAC, Plaintiff added another Count, numbered Count VI, against the City. (Id.) In this Count, which appears to be similar to the claim in Count V, Plaintiff alleged that the City "failed as a matter of policy, practice, and custom to adequately train, supervise or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention." (Id. at 9.) The City then filed another Motion to Dismiss (Doc. No. 13) and on March 6, 2019, the Court granted the Motion dismissing Counts V and VI, the only Counts naming the City of Philadelphia as a Defendant.[3] (Doc. No. 20.)

In an accompanying Opinion granting the City's Motion, the Court analyzed the claims in Counts V and VI. In Count V of the SAC, Plaintiff alleged a violation of his Fourteenth Amendment rights under § 1983, claiming that the inadequate medical care he received at CFCF was the result of the City's failure to "adequately train, supervise, or otherwise direct its police officers, including Defendant Officer Judge, concerning the recognition of a detainee's need for medical attention." (Id.) In the Opinion the Court found that Count V contained insufficient allegations to show that Plaintiff's injuries were the result of the City's failure to train. (Id. at 13.) Regarding Count VI, the Court found that Plaintiff failed to establish a Monell claim because he did not provide a sufficient factual basis to show that a municipal decisionmaker exhibited "deliberate indifference" to the need to train police officers on how to recognize when a detainee

---

[2]  In view of the filing of the Amended Complaint, the initial Motion to Dismiss (Doc. No. 4) was denied as moot on July 25, 2018. (Doc. No. 7.)

[3]  Defendant Judge did not join in the Motion to Dismiss. (See Doc. No. 20.)

requires medical attention.  (Doc. No. 19 at 24.)  Accordingly, the Court dismissed the claims asserted against the City in Counts V and Count VI.  (Id.)

As part of the Opinion, the Court discussed the circumstances that led to the arrest of Plaintiff by Defendant Judge and whether the officer had probable cause to arrest Plaintiff for the three offenses he was charged with violating.  The offenses are driving under the influence,[4] simple assault,[5] and recklessly endangering another person ("REAP").[6]  The Court found that Judge did not have probable cause to arrest Plaintiff for driving under the influence, but he did have probable cause to arrest him for the simple assault and REAP.

On July 15, 2019, based on this finding, Defendant Judge filed a Motion for Judgment on the Pleadings (Doc. No. 24), contending that because the Court found there was probable cause to

---

[4]  Under Pennsylvania law, an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.  18 Pa. Stat. C. S. A. § 3802(a).

[5]  The Pennsylvania simple assault statute provides that a person is guilty of simple assault if that person:

> (1)    attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;
> (2)    negligently causes bodily injury to another with a deadly weapon;
> (3)    attempts by physical menace to put another in fear of imminent serious bodily injury; or
> (4)    conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

18 Pa. Stat. C. S. A. § 2701.

[6]  Under Pennsylvania law, a person recklessly endangers another person by recklessly engaging in conduct which places or may place the other person in danger of death or serious bodily injury.  18 Pa. Stat. C. S. A. § 2705.

arrest Plaintiff for the two offenses, simple assault and REAP, Defendant Judge was entitled to have certain claims against him dismissed since the lack of probable cause was an element of those claims.  Plaintiff opposed this Motion.  (Doc. No. 25.)

Thereafter, with Plaintiff and Defendant Judge as the remaining parties in this case, the Court issued a Scheduling Order, setting the discovery deadline at December 16, 2019.  (Doc. No. 31.)  On October 29, 2019, Plaintiff filed a Motion seeking to Amend/Correct [the Second] Amended Complaint or For Leave to File Third Amended Complaint ("TAC"), submitting that new evidence obtained during discovery supports the claim originally brought against the City in Count V as well as the pending claims against Defendant Judge.  (Doc. No. 32.)  In this regard, Plaintiff alleges that the new evidence shows there was no probable cause to arrest him for simple assault and REAP.  For this reason, Plaintiff is seeking, in effect, to have the decision that there was probable cause to arrest him for simple assault and REAP, rendered in the Opinion dated March 6, 2019, reversed.  Defendant Judge filed a Response in Opposition to this Motion (Doc. No. 34)  and the Court held a hearing on the Motion on January 24, 2020.[7]

Two questions are currently before the Court.  First, whether Plaintiff's Motion to Amend/Correct [the Second] Amended Complaint or For Leave to File Third Amended Complaint ("TAC") (Doc. No. 32) should be granted.  Second, whether Defendant Judge's Motion for Judgment on the Pleadings (Doc. No. 24) should be granted.  For reasons that follow, Plaintiff's Motion will be granted and Defendant Judge's Motion will be denied.

---

[7]   Defendant Judge and the City are represented by the same counsel and it became apparent at the hearing that the City was also opposing the Motion to File the Third Amended Complaint.

## II.    BACKGROUND

In the proposed TAC, Plaintiff alleges the following facts.[8]  On October 30, 2016, Plaintiff Richard Erdreich was driving from his home in Hatboro, Pennsylvania, to visit his mother in Philadelphia, Pennsylvania.  (Doc. No. 32.)  While driving in Philadelphia, Plaintiff got lost and made a wrong turn onto Fuller Street, where he suddenly saw a young girl lying in the road.  (Id. ¶ 7.)  Plaintiff claims that it is unclear whether he struck the girl with his vehicle or whether she fell of her own accord.  (Id. ¶ 8)

After seeing the girl in the street, Plaintiff pulled over and waited in his car for the police and an ambulance to arrive.  (Id. ¶ 9.)  Defendant Officer Judge arrived on the scene at 5:29 p.m. By that time the girl had been removed from the scene.  (Id. ¶10.)  Defendant Judge did not see or speak with the girl.  (Id.)  Another police officer arrived on the scene to conduct a field sobriety test on Plaintiff.  (Id. ¶ 11.)  Plaintiff claims that he had not consumed any drugs or alcohol that day.  (Id. ¶ 15.)

After Plaintiff completed the field sobriety test with the other police officer, he was arrested by Defendant Judge for driving under the influence ("DUI").  (Id. ¶ 15.)  At the time of the arrest, Defendant Judge did not detect any odor of alcohol on Plaintiff or observe evidence of alcohol

---

[8]   Although the Court is primarily reciting facts contained in the TAC, the facts asserted in the SAC should also be considered since Plaintiff's Motion seeks, in part, to Amend/Correct the SAC.  For example, in the SAC, Plaintiff asserts that he passed a field sobriety test.  (See Doc. No. 11.) This claim is not in the TAC.  (See Doc No. 32.)  Moreover, Plaintiff raised at the hearing held on January 24, 2020 that Defendant Judge testified in his deposition that Plaintiff was unable to stand without leaning on the car door, his were eyes dilated, he appeared to be incoherent, and he was unable to communicate.  (See id. at 17.)  Plaintiff claims that this evidence shows that Judge should have been alerted that Plaintiff needed medical care.  Since one comprehensive complaint should be filed in this case and the Third Circuit has held that a district court should allow amendment of a complaint freely when warranted, the Court will permit Plaintiff to file a TAC by a date certain including these allegations along with the other facts set forth in the TAC.

consumption or drug use in Plaintiff's car.  (Id. ¶ 14.)  A police patrol wagon transported Plaintiff to the Police Detention Unit ("PDU") where a blood test was performed that same day, October 30, 2019.  (Id. ¶ 16.)  The blood test results were available to City employees within an hour or two of the blood being drawn.  (Id.)  The tests were negative, revealing no drug or alcohol use by Plaintiff.  (Id. ¶¶ 17-18.)

Plaintiff claims that City employees at the PDU performed an inadequate medical assessment and that he was illegally detained even after City employees knew or reasonably should have known that Plaintiff was not under the influence of drugs or alcohol.  (Id. ¶¶ 19-20.)  Despite this factual history, Plaintiff was charged with DUI, simple assault, and REAP, and then was transported to the Curran-Fromhold Correctional Facility ("CFCF").  (Id. ¶¶ 21-22.)  The charge of simple assault and REAP were apparently added by someone at the PDU.  (See Doc. No. 32.) Defendant Judge was unaware of who made the decision to charge Plaintiff with simple assault and REAP.  (See Doc. No. 32. at 6.)  He did not do so and was not consulted about adding these charges.  (Id.)  Plaintiff alleges that Defendant Judge failed to perform any medical assessment of Plaintiff in violation of police directives and failed to provide Plaintiff with appropriate medical care.[9]  (Id. at 20.)

Plaintiff asserts that while he was detained at CFCF he was "incoherent, experience[d] frequent falls, and was inconti[n]ent."  (Id. at 9.)  In addition, new medical records show that when

---

[9] As previously described in n.8, Plaintiff explains that Defendant Judge testified at his deposition that Plaintiff was unable to stand without leaning on the car door, his were eyes dilated, he appeared to be incoherent, and he was unable to communicate.  (See Doc. No. 32 at 17.) Although, standing alone, these facts may support probable cause for the DUI arrest, this inference is overcome by other allegations made by Plaintiff, when viewed as true.  For example, Plaintiff has alleged that Judge passed the field sobriety test, and that he had no alcohol in his system as shown by the blood test.  Thus, at this stage of the proceedings, there was no probable cause to arrest for DUI.

Plaintiff was admitted to the hospital, Plaintiff was so disoriented that he was unable to communicate and was deemed too incoherent to consent to his own surgery.  (Id.)  Specifically, Plaintiff could "not displa[y] capacity to consent" to his medical treatment and showed signs of "neurologic deterioration."  (Id. at 65-66.)

Four days after Plaintiff was incarcerated at CFCF, someone there recognized that Plaintiff required medical attention. He was transferred to the Aria Torresdale Hospital, where he was diagnosed with a grade II Astrocytoma, which is a malignant brain tumor.  (Id. ¶¶ 31-32.)  On November 7, 2016, Plaintiff underwent surgery for the tumor, during which physicians at Aria Torresdale Hospital discovered that Plaintiff also had a tumor on his kidney.  (Id. ¶¶ 33-34.)  Several days after the surgery, Plaintiff was transported back to the CFCF.  (Id. ¶ 36.)  On December 2, 2016, Howard Erdreich, Plaintiff's brother, discovered that Plaintiff had been arrested and called the Philadelphia District Attorney's Office to learn why he was detained.  (Id. ¶ 37.)  According to the TAC, soon after his brother contacted the District Attorney's Office, all charges against Plaintiff were dropped and he was released from prison.  (Id. ¶ 38.)

On May 29, 2018, Plaintiff filed this civil rights action alleging that the City and Defendant Judge violated his civil rights by falsely arresting and unreasonably detaining him and denying him adequate medical care. (Doc. No. 1.)  On August 14, 2018, Plaintiff filed the SAC.  (Doc. No. 11.)  Then, on August 28, 2018, the City filed a Motion to Dismiss Counts V and VI[10] of the SAC for Failure to State a Claim.  (Doc. No. 13.)  In Counts V and VI, the City of Philadelphia was the only named Defendant.  As previously stated, on March 6, 2019, the Court granted the City's

---

[10] The allegations pled in Counts I to VI of the SAC and Counts I to V of the proposed TAC will be discussed in detail below.  Count VI of the SAC, a second count naming the City as a Defendant, has been dropped by Plaintiff and apparently has been incorporated in Count V of the TAC.

Motion to Dismiss Count V and VI, noting that Counts I to IV filed against Officer Judge would remain.  (Doc. No. 19.)  Then, on July 15, 2019, Defendant Judge filed the Motion for Judgment on the Pleadings.  (Doc. No. 24.)  Thereafter, Plaintiff filed the Motion to Amend/Correct [the Second] Amended Complaint or For Leave to File Third Amended Complaint ("TAC"), a copy of which was attached to the Motion.  (Doc. No. 32.)  These Motions are now ripe for disposition.  (Id.)  As noted above and for reasons that follow, Plaintiff's Motion will be granted and Defendant Judge's Motion will be denied.

## III.   DIFFERENCES BETWEEN THE SECOND AND THIRD AMENDED COMPLAINTS

There are several differences between the allegations in the SAC and proposed TAC.  In the "Factual Background" of the SAC, Plaintiff alleges that Defendant Judge lacked probable cause to arrest Plaintiff for the three charges: driving under the influence ("DUI"), simple assault, and recklessly endangering another person ("REAP").  (Doc. No. 11.)  As noted above, in the Opinion issued on March 6, 2019, the Court held that given the facts asserted in the SAC, Defendant Judge had probable cause to arrest Plaintiff for REAP and simple assault but lacked probable cause to arrest Plaintiff for DUI.  The Court also held that Plaintiff's SAC failed to allege facts to support a Monell claim against the City under 42 U.S.C. § 1983.  However, when granting the first Motion to Dismiss and dismissing the City as a defendant, the Court relied on operative facts in the SAC that are significantly different from the facts set forth in the TAC.  For these reasons, the Court will highlight the differences between the allegations in the SAC and TAC.

A.    COUNT I:  Violation Under 42 U.S.C. § 1983 (False Arrest for DUI and
Unreasonable Seizure);  <u>Plaintiff v. Defendant Judge</u> [11]

In Count I of the SAC and TAC, pursuant to 42 U.S.C. § 1983, Plaintiff alleges claims of

false arrest and unreasonable seizure against Defendant Judge.  (Doc. No. 32.)   In the TAC,

Plaintiff presents new facts to support these claims.   First, Plaintiff alleges that Defendant Judge

lacked observational evidence to support a finding of probable cause to arrest Plaintiff for DUI.

For example, Count I of the TAC states:

> [Defendant Judge] arrested and detained [Plaintiff] for driving under the influence
> even though <u>he smelled no odor of alcohol, saw no physical evidence that [Plaintiff]
> had consumed alcohol or drugs</u>, and a blood test revealed that no drugs or alcohol
> were present in [Plaintiff's] system. (Emphasis added.)

(<u>Id</u>.)  By contrast, Count I of the SAC had alleged:

> [Defendant Judge] arrested and detained [Plaintiff] for driving under the influence
> even though a blood test revealed that no drugs or alcohol were present in
> [Plaintiff's] system and he had passed a field sobriety test.

(Doc. No. 11 at 5.)

In addition, Plaintiff alleges new information in the TAC's "Factual Background."

Defendant Judge was not the officer who performed the field sobriety test on Plaintiff, but rather

"[a]nother police officer arrived on the scene to conduct a field sobriety test on [Plaintiff]."  (Doc.

No. 32 at 16.)  Plaintiff also avers that Defendant Judge arrived on the scene at 5:29 p.m., but by

that time the girl had been removed from the scene.  (<u>Id</u>.)  Defendant Judge did not see or speak

with the her.  (<u>Id</u>.)

---

[11]  In the headings, after referring to the Count number in the TAC, the Court will state the claim
being made by Plaintiff in each Count and name the Defendant being sued.

Moreover, Plaintiff changes and restructures the claim that Defendant Judge failed to provide adequate medical care during his arrest.  (Id. at 20-21.)  Count I of the SAC states in relevant part, "[Defendant Judge] failed to provide [Plaintiff] with appropriate medical care after his arrest." (Doc. No. 11 at 6.)  However, in the TAC, Plaintiff alleges more specifically:

> [Defendant Judge] failed to perform any medical assessment of [Plaintiff] in violation of police directives and failed to provide [Plaintiff] with appropriate medical care after his arrest. (Emphasis added.)

(Doc. No. 32 at 20.)  The TAC also adds the following paragraph:

> By failing to recognize [Plaintiff]'s need for medical care and by failing to provide adequate medical care, [Defendant Judge] violated Plaintiff's rights under the Constitution of the United States, in particular the Fourteenth Amendment, and his rights under the Constitution and laws of the Commonwealth of Pennsylvania.

(Id.)

The final change in Count I concerns Plaintiff's claims of unreasonable seizure and detention.  Count I of the SAC states:

> [Defendant Judge] detained [Plaintiff] based upon a false arrest, thereby depriving him of his right to be free from unreasonable seizure and depriving him of his right to liberty without providing him due process of law.

(Doc. No. 11 at 6.)  However, this language is modified in the TAC:

> Additionally, [Plaintiff] remained in CFCF for an unreasonable period of time due to the charges against him, depriving [Plaintiff] of his Fourth Amendment right to be free from unreasonable seizure, as well as his rights under the Constitution and laws of the Commonwealth of Pennsylvania.

(Doc. No. 32 at 20.)

B.    COUNT II:  Violation Under 42 U.S.C. § 1983 (False Arrest for DUI); Plaintiff v. Defendant Judge

In Count II of the SAC and TAC, Plaintiff alleges that Defendant Judge falsely arrested him for DUI.  There is only one minor difference between the SAC and TAC.  Count II of the SAC states:

12

> Upon taking a blood test that revealed no alcohol or drugs in [Plaintiff]'s system, [Defendant Judge] failed to release [Plaintiff] and detained him for an unreasonable period.

(Doc. No. 11 at 6.)  By contrast, Count II of the TAC states:

> <u>After</u> the blood test revealed no alcohol or drugs in [Plaintiff]'s system, [Defendant Judge] failed to release [Plaintiff] and detained him for an unreasonable period.  (Emphasis added.)

(Doc. No. 32 at 21.)

      C.     COUNT III:  Violation Under  42 U.S.C. § 1983 (False Imprisonment for Arrest of Plaintiff Without Probable Cause for DUI, Simple Assault, and REAP);  <u>Plaintiff v. Defendant Judge</u>

Count III of both the SAC and TAC concerns the false imprisonment claim.

Plaintiff did not modify Count III in the TAC.

      D.     COUNT IV:  Violation Under 42 U.S.C. § 1983 (Malicious Prosecution For All Three Criminal Charges);  <u>Plaintiff v. Defendant Judge</u>

In Count IV of both the SAC and TAC, Plaintiff alleges the claim that Defendant Judge committed malicious prosecution when he filed the three offenses against him.  Count IV, however, of TAC adds the following paragraphs:

> …[Defendant Judge] maliciously brought criminal charges against [Plaintiff] for driving under the influence.

> [Plaintiff] was detained for driving under the influence for over a month, even though a blood test performed on the day of his arrest showed that he had no drugs or alcohol in his system.

> [Plaintiff] was detained again following his brain surgery and hospitalization due to the charge against him, even once it was known that [Plaintiff] was suffering from a brain tumor and was never under the influence of drugs and alcohol…

(Doc. No. 32 at 22.)

E.      COUNT V:  Violation Under 42 U.S.C. § 1983 (<u>Monell</u> Claim);
        <u>Plaintiff v. The City of Philadelphia</u>

In Count V of the TAC, Plaintiff avers that the City failed to adequately train, supervise, or otherwise direct its police officers and prison officials regarding a detainee's need for medical attention.  (Doc. Nos. 11, 32.)  In the TAC, Plaintiff modified the allegations in the SAC in certain critical respects.

First, in Count V of the SAC, Plaintiff only alleged that the City "failed, as matter of policy, practice, and custom, to adequately, train, supervise, or otherwise direct its police officers, including Judge, concerning the recognition of a detainee's need for medical attention."  (Doc. No. 11 at 8.)  In the TAC, however, Plaintiff adds "prison officials" to those who the City allegedly failed to adequately train, supervise, or otherwise direct.  (Doc. No. 32 at 24.)

Second, in Count VI of the SAC,[12] regarding police officers, Plaintiff claimed that the City was grossly negligent, deliberately indifferent, and reckless, "with respect to [Plaintiff]'s need for medical attention by unreasonably delaying seeking medical assistance for [Plaintiff]."  (Doc. No. 11 at 8.)  In the TAC, Plaintiff adds the following allegations in claiming that the City was grossly negligent, deliberately indifferent, and reckless:

> …with respect to [Plaintiff]'s Fourth and Fourteenth Amendment rights, as well as his rights under the Constitution and laws of the Commonwealth of Pennsylvania, by arresting him without probable cause, detaining him due to the unlawful arrest, failing to timely seek medical assistance for [Plaintiff], and failing to release him once they knew or should have known the results of the blood test.

(Doc. No. 32 at 24.)

Further, the SAC states that because the City failed to adequately train, supervise, or otherwise direct its police officers, "[Plaintiff] experienced pain and suffering, a delay in medical

---

[12]  As noted previously, the SAC contains an extra count, Count VI, that is not in the TAC.  The allegations in Count VI apparently have been incorporated in Count V of the TAC.

treatment, exacerbation of pre-existing conditions and extensive medical costs." (Doc. No. 11 at 8-9.) The TAC states that the City failed "to implement an adequate policy for seeking medical assistance" and Defendants "ignored Plaintiff's obvious need for medical attention and unreasonably delayed seeking medical assistance for [Plaintiff]." (Doc. No. 32 at 24.)

> In addition, Plaintiff adds the following paragraphs to Count V of the TAC:
>
> …[Plaintiff] was also charged with reckless endangerment and simple assault without probable cause to support these additional charges…
>
> [Plaintiff] was incarcerated in CFCF without probable cause for any of the offenses that he was charged with committing…
>
> [Plaintiff] exhibited obvious physical symptoms of a serious medical condition while incarcerated at CFCF…
>
> Prison officials ignored [Plaintiff]'s obvious physical problems and symptoms for four days while [Plaintiff] was incarcerated…
>
> Even after [Plaintiff] had surgery for his brain tumor and after City and CFCF officials knew or should have known that there was no basis for the criminal charges, the City ignored the doctors' treatment recommendations of [Plaintiff] and instead continued to detain him at CFCF...

(Doc. No. 32 at 24.)

## IV.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure afford a plaintiff the opportunity to amend its initial complaint once as a matter of course for the reasons set forth in Rule 15.[13] <u>See</u> Fed. R. Civ. P.

---

[13] The pertinent provisions of Rule 15 provide:

> (a)(1) <u>Amending as a Matter of Course</u>. A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

15(a)(1-2),(d.)  Rule 15(a)(2) provides that courts have discretion to permit additional amendments "when justice so requires," and that such leave to amend should be "freely given."  Id.

In Foman v. Davis, the United States Supreme Court identified several factors that district courts may consider when deciding whether to grant leave to amend.  371 U.S. 178, 182 (1962). These factors include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Id.

The Third Circuit has recognized that a district court may deny a motion to amend a complaint if the record reflects that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. 178). Because this list is not exhaustive, district courts may also take into account considerations of judicial economy in making their assessments.  Mullin v. Balicki, 875 F.3d 140, 149-50 (3d Cir. 2017).

---

(a)(2)  Other Amendments. In all other cases, a party may amend its pleading only
with the opposing party's written consent or the court's leave. The court
should freely give leave when justice so requires.

* * *

(d)  On motion and reasonable notice, the court may, on just terms, permit a party
to serve a supplemental pleading setting out any transaction, occurrence, or
event that happened after the date of the pleading to be supplemented. The
court may permit supplementation even though the original pleading is
defective in stating a claim or defense. The court may order that the opposing
party plead to the supplemental pleading within a specified time.

V.      **ANALYSIS**

A.      Undue Delay

The first consideration in determining whether to allow an amendment of the SAC is whether the moving party, in this case Plaintiff, could have amended earlier and avoided undue delay.  "[D]elay may become undue when a movant has had previous opportunities to amend a complaint."  Id.  (citing Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)).  A district court may deny leave to amend a pleading on the basis of undue delay where the moving party has: (1) failed to utilize previous opportunities to amend and (2) has not offered any explanation for this failure.  Synthes (U.S.A.) v. Globus Med., Inc., No. CIV.A. 04-1235, 2007 WL 906164, at *2 (E.D. Pa. Mar. 21, 2007).  There is no presumptive period in which a motion for leave to amend is deemed "timely" or in which delay becomes "undue."  Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006).  The "question of undue delay requires that [the Court] focus on the movant's reasons for not amending sooner."  Mullin, at 151.

In this case, Plaintiff filed the SAC on August 14, 2018 (Doc. No. 11) and then sought leave to Amend/Correct the SAC or to File the TAC over a year later on October 29, 2019.  (Doc. No. 32.)  Prior to that date, the Court had entered an amended Scheduling Order on April 18, 2019 extending fact discovery to December 16, 2019.  (Doc. No. 23.)  The new and significant facts that Plaintiff added to the TAC, as set forth supra, were essentially identified during discovery, namely, during Defendant Judge's deposition which occurred on September 19, 2019.  (See. Doc. No. 32 Ex. B.)  As noted, Plaintiff filed his Motion on October 29, 2019, which was within the period of fact discovery.  He had until December 16, 2019 to attempt to uncover more evidence.  Because fact discovery was ongoing, Plaintiff will not be faulted for filing his Motion about six weeks after Defendant Judge's deposition.  Therefore, considering the sequence of events, the Court declines to find that Plaintiff engaged in undue delay.

B.      Futility

Another factor the Court must consider is whether the new allegations set forth in the TAC would be futile.  Futility is shown when the complaint, as amended, would fail to state claim upon which relief could be granted.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  In assessing "futility," the District Court employs the 12(b)(6) motion to dismiss standard.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "The question before the Court, therefore, is not whether the movant will ultimately prevail.  Rather, it is whether the plaintiff is able to articulate 'enough facts to state a claim to relief that is plausible on its face.'"  Monroe v. City of Hoboken, No. CIV.A. 11-2556 JLL, 2012 WL 1191177, at *7 (D.N.J. Apr. 10, 2012); see also Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."  6 Wright, Miller & Kane, Federal Practice & Procedure § 1487 (2d ed.1990); Synthes, Inc. v. Marotta, 281 F.R.D. 217, 229 (E.D. Pa. 2012).  With this legal framework in mind and looking at the elements of each claim in the TAC in the light most favorable to Plaintiff, the Court will consider whether proposed amendments to the TAC would be futile.

1.      COUNT I:   Violation Under 42 U.S.C. § 1983 (False Arrest for DUI and Unreasonable Seizure);  Plaintiff v. Defendant Judge

In Count I of the TAC, Plaintiff set forth new facts concerning Defendant Judge's alleged violation of Plaintiff's civil rights that he gleaned from Judge's deposition.  (Doc. No. 32.) Pursuant to 42 U.S.C. § 1983, Plaintiff makes the following claims in Count I against Defendant Judge: 1) false arrest for DUI and 2) unreasonable seizure under the Fourth Amendment.[14]

---

[14]  The unreasonable seizure claim appears to be based on the claim of false arrest, although the reasonable seizure covers the time Plaintiff was also incarcerated at CFCF.

A claim for false arrest under § 1983 is rooted in the Fourth Amendment prohibition against unreasonable seizure.  See U.S. Const. Amend. IV.  To succeed on a false arrest claim under § 1983, a plaintiff must demonstrate that the officer lacked probable cause for the arrest. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Frazier v. City of Philadelphia, No. 18-827, 2018 WL 1093314, at *1 (E.D. Pa. Feb. 28, 2018) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).  In determining whether probable cause existed for an arrest, a district court applies an objective standard based on "'the facts available to the officers at the moment of the arrest.'" Barna v. City of Perth Amboy, 42 F.3d 809, 820 (3d Cir. 1994) (quoting Beck v. Ohio, 379 U.S. 89, 96 (1964)).

Here, reviewing the allegations in the TAC in the light most favorable to Plaintiff, he has demonstrated that Defendant Judge lacked probable cause to arrest him for DUI because the facts and circumstances available to Judge were insufficient to warrant the arrest for DUI.  First, Defendant Judge did not see the victim because he arrived on the scene at 5:29 p.m. and, by that time, the girl who was allegedly hit by Plaintiff's car "had been removed from the scene." (Doc. No. 32 at 16.)  Importantly, Judge "did not see or speak to her." (Id.)  Second, Defendant Judge did not perform any tests to have a reasonable basis to believe that Plaintiff was driving under the influence.  As stated supra, Defendant Judge was not the police officer who conducted Plaintiff's field sobriety test, but rather, "another police officer arrived on the scene to conduct a field sobriety test on [Plaintiff]."[15]  (Id.)  Yet despite this fact, after Plaintiff completed the field sobriety test

_____

[15] Although another police officer conducted the field sobriety test, the TAC does not state whether Plaintiff passed or failed the test.  (See. Doc. No. 32.)

with another officer, Defendant Judge arrested Plaintiff for DUI.  (Id.)  Third, Defendant Judge

lacked observational evidence to believe that Plaintiff committed the offense of DUI because he

"did not detect any odor of alcohol on [Plaintiff]" nor was there "evidence of alcohol consumption

or drug use visible in [Plaintiff's] car."  (Id.)  Lastly, Defendant Judge ignored Plaintiff's blood

test that revealed that no drugs or alcohol were present in his system and instead detained Plaintiff

at CFCF "for an unreasonable period of time…depriving Plaintiff of his Fourth Amendment right

to be free from unreasonable seizure."  (Id. at 20-21.)  As noted above, Plaintiff's blood test results

were available two hours after his arrest, yet despite their availability, Defendant Judge charged

Plaintiff with DUI and had him transported to CFCF.

Based on these facts—Judge smelled no odor of alcohol, saw no physical evidence of

alcohol or drugs, apparently did not know the results of the field sobriety test, and a blood test

revealed that no drugs or alcohol were present—it is clear that he had no reason to believe that

Plaintiff had committed the offense of DUI.  A reasonable person with those facts and in Defendant

Judge's position would not have a reasonable belief that Plaintiff was driving under the influence.

Therefore, the facts available to Defendant Judge were insufficient to warrant the arrest.  This same

conclusion was reached in the Opinion dated March 6, 2019.

Thus, Plaintiff has asserted in the TAC sufficient facts to establish his claims of false arrest

for DUI and unreasonable seizure as alleged in Count I.  Accordingly, it would not be futile to

permit the amendment of the SAC to include the additional information set forth in Count I of the

TAC.[16]

---

[16]  Plaintiff alleges in Count II the same claim asserted in Count I; Plaintiff alleges in Count II a
False Arrest claim for DUI against Defendant Judge.  Since this claim has been properly
established in Count I, for the same reasons it is sufficiently pled in Count II.

2.     COUNT III:  Violation Under  42 U.S.C. § 1983 (False Imprisonment for
       Arrest of Plaintiff Without Probable Cause for DUI, Simple Assault, and
       REAP);  Plaintiff v. Defendant Judge

In Count III, Plaintiff alleges a violation of his Fourteenth Amendment rights for his false imprisonment based on his arrests for DUI, simple assault, and REAP.  (Doc. No. 32.)[17]  A false imprisonment claim under § 1983 is based on the Fourteenth Amendment protection against deprivation of liberty without due process.  Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).  Relevant here, an arrest based on probable cause cannot become the source of a claim for false imprisonment.  Id.; see also Rosembert v. Borough of East Lansdowne, 14 F. Supp 3d 631 (W.D. Pa. 2014) (finding that a plaintiff's claim for false imprisonment and false arrest failed where probable cause existed for the arrest).

Here, Plaintiff states a cognizable Fourteenth Amendment violation for false imprisonment because Defendant Judge lacked probable cause to arrest Plaintiff for DUI,[18] simple assault, and REAP.  As noted above, new information in the TAC alleges that Defendant Judge did not observe the injured girl in lying in the street; in fact, when Defendant Judge arrived at the scene at 5:29 p.m., the girl was already removed from the scene.  (Doc. No. 32 at 16.)  Accordingly, Judge was unable to observe the girl's injuries or learn how she was injured.  (Id.)  Moreover, Defendant Judge did not communicate with the girl nor had any interaction with her.  (Id.)  A person in Defendant Judge's position would not have a reasonable basis to believe that Plaintiff committed the crime of simple assault by hitting the girl with his car.

---

[17]  Once again, in Count III, Plaintiff is raising the issue that he was arrested for DUI without probable cause.  The same reasoning that supports the false arrest for DUI as claimed in Count I applies equally to the false imprisonment claim in Count III.

[18]  As stated above, Plaintiff has adequately established that Defendant Judge lacked probable cause to arrest Plaintiff for DUI.  The Court has already addressed this issue and there is no need to cover this point again.

Similarly, Defendant Judge did not have sufficient reasons to believe that Plaintiff acted recklessly.  As noted, Defendant Judge did not perform the field sobriety test, so he had no reason to believe Plaintiff consumed alcohol or drugs while driving his car.  Further, no facts allege that Defendant Judge observed Plaintiff speeding or driving recklessly. Therefore, a reasonable person would not have a basis for believing that Plaintiff committed the crime of REAP.

In addition to this new information describing the scene of the arrest, it is alleged in the TAC that Defendant Judge only arrested Plaintiff for DUI.  Included in the TAC is an excerpt from Defendant Judge's deposition testimony:

> Q. And the [line] that you just read refers to DUI and the arrest report…shows the charges [of] DUI?
>
> A.  Correct.
>
> Q.  Is that what you were arresting him for?
>
> A.  Yes.
>
> . . .
>
> Q.  Now, at the bottom of this page under the charges, it shows, in addition to DUI, simple assault and recklessly endangering another person. Do you know who it was who made the decision to charge [Plaintiff] with those offenses?
>
> A.  No, I don't.
>
> Q.  Were you consulted about that?
>
> A.  I was not.

(Doc No. 32 at 6.)

It is unclear who made the decision to charge Plaintiff with simple assault and REAP, but at the very least, Defendant Judge did not do so.  In any event, Judge would not have probable cause to arrest Plaintiff for these offenses.

22

Based on this evidence, it is clear that Defendant Judge lacked sufficient facts to arrest Plaintiff for simple assault and REAP. Thus, again viewing the facts alleged in the proposed TAC as true, Plaintiff has clearly stated a Fourth Amendment violation with respect to false imprisonment because Defendant Judge did not have probable cause to arrest Plaintiff for any of the three offenses. Accordingly, the claim asserted in Count III of the TAC is not futile.

3.    COUNT IV: Violation Under 42 U.S.C. § 1983 (Malicious Prosecution For All Three Criminal Charges); Plaintiff v. Defendant Judge

In Count IV, Plaintiff alleges a claim of malicious prosecution for the three criminal charges against Defendant Judge. A cause of action for malicious prosecution requires proof that the defendant (1) instituted criminal proceeding against the plaintiff (2) without probable cause (3) with malice and (4) that the proceedings terminated in favor of the plaintiff. Tomaskevitch v. Specialty Records Corp., 717 A.2d 30 (Pa. Commw. Ct. 1998); see Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 518 Pa. 517, 544 A.2d 940 (1988); see also Turano v. Hunt, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993).

Here, Plaintiff adequately alleges that Defendant Judge instituted proceedings for DUI, simple assault, and REAP against Plaintiff without probable cause and with malice. First, regarding the probable cause element, as stated in the analysis for Counts I and III, Defendant Judge lacked sufficient facts to establish probable cause to arrest Plaintiff for DUI, simple assault, and REAP.[19]

Second, regarding the malice element, Plaintiff proffers new evidence that supports his claim that Defendant Judge acted maliciously. Specifically, the TAC states that "[Defendant Judge] detained [Plaintiff] for [DUI] for over a month, even though a blood test performed on the

---

[19]  Because the Court has already addressed above the lack of probable cause for these offenses, there is no need to discuss them further.

day of his arrest showed that he had no drugs or alcohol in his system." (Doc. No. 32 at 16.) To recap, once Plaintiff was arrested for DUI, he was transported to the Police Detention Unit where a blood test was performed the same day of his arrest. (Id.) Approximately two hours after Plaintiff's arrest, the blood test results were available and negative, revealing no drug or alcohol use by Plaintiff. (Id.) Yet despite having the results available, Plaintiff was charged with DUI, simple assault, and REAP and transported to CFCF. (Id. at 17.) Based on all this information, an inference is raised that Defendant Judge acted with malice towards Plaintiff. Moreover, in the TAC, Plaintiff asserts that Defendant Judge acted maliciously when he detained Plaintiff again, following his brain surgery and hospitalization, "even once it was known that "[Plaintiff] was suffering from a brain tumor and was never under the influence of drugs and alcohol[.]" (Id.)

Regarding the fourth element, Plaintiff has alleged that the criminal proceedings terminated in his favor. As asserted in the TAC, soon after Plaintiff's brother contacted the District Attorney's Office, all charges against Plaintiff were dropped and he was released from prison. (See Doc. No. 32.)

Based on this information, Plaintiff has adequately alleged that Defendant Judge instituted criminal proceedings against him without probable cause and with malice. Taking the allegations in the proposed Count IV as true—as required in futility analysis—Plaintiff's claim for malicious prosecution is sufficiently pled.

4.    COUNT V:  Violation Under 42 U.S.C. § 1983 (Monell Claim);
       Plaintiff v. The City of Philadelphia

In Count V of the TAC, Plaintiff brings a Monell[20] claim against the City of Philadelphia under § 1983. To properly assert a Monell claim, a plaintiff must establish that (1) a

---

[20]   As set forth in the eponymous Monell v. Dept. of Soc. Serv. of City of New York, a municipality like Philadelphia cannot be held responsible for the acts of its employees based on the doctrine of respondeat superior; rather, a municipality can only be liable when an official policy,

constitutionally protected right has been violated and (2) the alleged violation resulted from municipal policy or custom, or the deliberate indifference to the rights of citizens.  Monell v. Dept. of Soc. Serv. of City of New York 436 U.S. 658, 694 (1978).  When lodging a Monell claim, the complaint must sufficiently "link the alleged offending policies or customs to anyone. . .who had policy-making authority."  Rees v. Office of Children and Youth, 473 Fed. App'x 139, 143 (3d Cir. 2012).

In this case, regarding the first element of a Monell claim, Plaintiff has established that his Fourteenth Amendment substantive due process right to have police officers and prison employees provide him with adequate medical care was violated when viewing the facts in the proposed TAC in the light most favorable to him.  Moreover, he has also established that his Fourth Amendment right to be arrested based on probable cause has been violated.

Regarding the second element, which requires that the alleged violation result from a municipal policy or custom or deliberate indifference, Plaintiff asserts three claims in the TAC: (1) the City of Philadelphia has an unlawful policy or custom regarding when to provide medical care for detainees and a failure to train police officers to arrest based on probable cause; (2) the City of Philadelphia is deliberately indifferent to the need to train police officers and prison employees on when to seek medical treatment for detainees; and (3) the City of Philadelphia is deliberately indifferent to the need to implement procedures to address the serious medical needs of persons detained by police officers and prison employees.  For reasons stated below, Plaintiff has properly asserted his second and third claims.  However, his first claim fails.  Because Plaintiff

---

custom, or deliberate indifference to the rights of its citizens causes an injury to a plaintiff. 436 U.S. 658, 694 (1978).

has established a <u>Monell</u> claim against the City of Philadelphia based on his second and third claims, the Court will reinstate the City as a Defendant in this case.

a. <u>Plaintiff's First Claim</u>: The City of Philadelphia Has Unlawful Policies or Customs Regarding When to Provide Medical Care to Detainees and a Failure to Train Police Officers to Arrest Based on Probable Cause

First, Plaintiff alleges that the City of Philadelphia has an unlawful municipal policy or custom regarding when to provide medical care to detainees.  Second, Plaintiff asserts that the City has an unlawful policy or custom regarding a failure to train police officers to arrest based on probable cause.  In order to succeed on these claims, Plaintiff must 1) identify a municipal policymaker; 2) who created a municipal policy or custom; 3) that violated his Fourteenth and/or Fourth Amendment rights.  Plaintiff must identify a municipal policymaker who is "actually responsible" for creating an affirmative municipal policy or custom that when implemented resulted in a violation of his constitutional rights.  <u>See</u> <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 417 (1997); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989) (explaining that for § 1983 purposes, a municipal "policy" must reflect a "deliberate" or "conscious" choice by a municipality).

To be a policymaker for § 1983 purposes, an official must have final policymaking authority.  <u>LaVerdure v. Cty. of Montgomery</u>, 324 F.3d 123, 126 (3d Cir. 2003).  A complaint must include "specific factual allegations referencing the conduct" and "persons responsible for any official municipal policy or custom." <u>See</u> <u>Torres v. City of Allentown</u>, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 3008) (emphasis added) (citing <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005)). A viable claim for municipal liability under § 1983 must sufficiently "link the alleged offending policies or customs to anyone. . .who had policy-making authority." <u>Rees</u>, 473 Fed. App'x at 143.

Here, Plaintiff fails to identify a City of Philadelphia policymaker responsible for creating the municipal policies or customs in issue.  Specifically, Plaintiff does not identify a City of Philadelphia municipal policymaker who had decision-making authority regarding medical care for detainees or who ensured arrests were made with probable cause.  Even more, Plaintiff does not assert factual allegations referencing a municipal policymaker's conduct such that he fails to identify municipal policymakers who established or maintained a policy or custom "which caused a municipal employee to violate the plaintiff's constitutional rights; the policy must be the moving force behind the violation."  See Estate of Henderson v. City of Philadelphia, 216 F.3d 1076 (3d Cir. 2000).

In addition, the proposed TAC simply does not have any facts that establish the City has the unlawful policies or customs alleged.  In this regard, in a § 1983 claim, a "municipal policy" is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  Harris, 489 U.S. at 378 (1989).  A "municipal custom" is established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.  Schlayach, 2020 WL 358934, at *5.  Here, Plaintiff fails to identify a City of Philadelphia proclamation, policy, or edict regarding when to seek medical care for detainees with serious medical conditions.  Moreover, Plaintiff fails to identify a well-settled course of conduct of the City of Philadelphia regarding prison employees and police officer's treatment of detainees who had serious medical needs that ran afoul to the Fourteenth Amendment.

Plaintiff also alleges that his Fourth Amendment right to be arrested based on probable cause has been violated.  Plaintiff, however, does not link the City of Philadelphia's execution of a municipal policy or custom to his arrest without probable cause.  Plaintiff fails to "identify the

challenged policy, attribute it to the [City of Philadelphia] itself" and fails to "show a causal link between the execution of the policy and the injury suffered." See e.g. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Plaintiff merely relies upon circumstances surrounding his own arrest. This information is insufficient to show a failure to train policy or custom by the City on the requirements of probable cause. In sum, neither a violative custom or policy has been shown. Accordingly, Plaintiff's first claim does not rise to the level of municipal liability under § 1983.

> b. Plaintiff's Second Claim: The City of Philadelphia is Deliberately Indifferent to the Need to Train Police Officers and Prison Employees on When to Seek Medical Treatment for Detainees

Second, Plaintiff's second claim is that the City of Philadelphia acted with deliberate indifference to the need to train police officers and prison employees on when to seek medical treatment for detainees. As noted above, a plaintiff must show a violation of his constitutional right was caused by (1) official city policy; (2) city custom; or (3) the city's deliberate indifference to its constituents' civil rights. Natale v. Camden Cty Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003). The second claim involves the deliberate indifference prong.

"Inadequacy of police training may serve as basis for § 1983 municipal liability only where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact.'" Harris, 489 U.S. at 379.[21] In failure to train claims, it may happen that "in light of the

---

[21] In Harris, the plaintiff, a detainee, filed suit against the City of Canton Ohio under § 1983 alleging that the City was liable under the Due Process Clause of the Fourteenth Amendment, for failing to provide necessary medical attention to him while he was in police custody. 489 U.S. 378, 379, (1989). The Court held that inadequacy of police training may serve "as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." Id. (Emphasis added.)

duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.  The Third Circuit considers the following factors in determining whether the deliberate indifference standard is met:

> (1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Estate of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne Cty., 660 F.3d 169, 180 (3d Cir. 2011)).

First, as stated above, Plaintiff proffers new evidence in the TAC to show that he exhibited obvious physical symptoms of the kind that a municipal policymaker would know that employees would confront as part of their regular duties.  For example, while he was detained at CFCF he was "incoherent, experience[d] frequent falls, and was inconti[n]ent."  (Doc. No. 32 at 9.) Furthermore, the proposed TAC asserts that Defendant Judge failed to perform any medical assessment of Plaintiff in violation of police directives.[22]  (Id. at 20.)  He could "not displa[y] capacity to consent" to his medical treatment and showed signs of "neurologic deterioration."  (Id. at 65-66.)  Even more, Plaintiff alleges that the need for surgery was so obvious and was such "an emergency" that "the doctors at the hospital proceeded even though they recognized that [Plaintiff] was incompetent to consent."  (Id. at 9.)  Given these facts and viewing them in the light most

---

[22] In addition, it should be noted that Defendant Judge testified at his deposition that when he arrived at the scene of the accident Plaintiff was unable to locate his car registration, unable to stand without leaning on the car door, unable to communicate, appeared incoherent, and his eyes were dilated.  (See Doc. No. 45.)

favorable to Plaintiff, it is obvious that even a lay person should have recognized Plaintiff's need for medical attention.

For example, in <u>Davis v. City of Philadelphia</u>, the plaintiff was injured in car accident. 284 F. Supp. 3d 744 (E.D. Pa. 2018). Philadelphia police arrested her and transported her to the hospital. <u>Id.</u> Plaintiff was discharged with instructions from Emergency Room personnel that she needed urgent attention from an orthopedic specialist. <u>Id.</u> Despite this urgency, she remained in custody for another six weeks before she received the recommended care. <u>Id.</u> At that time surgery was performed, but a malunion of the bones allegedly prevented a successful outcome. <u>Id.</u> Plaintiff filed a § 1983 claim against the City of Philadelphia. <u>Id.</u> In <u>Davis</u>, the court stated that:

> [I]n a major city like Philadelphia, there can be no doubt that police officers will, as part of their duties, regularly transport detainees (and prisoners) with serious medical needs to and among the City's detention facilities. Those detainees may be coming from a hospital to a detention facility or moving from one facility to another—this case involves both scenarios. It is plausible then, that the need to train police to relay urgent medical information could be "so obvious" that a failure to do so would amount to deliberate indifference…

<u>Id.</u> at 755–56.

Here, similar to <u>Davis</u>, it is entirely plausible that the City of Philadelphia knows that its employees will encounter many situations where police officers and prison employees will confront detainees in need of immediate medical attention. There is no doubt that a police officers and prisoner employees, as part of their duties, will regularly transport detainees. It is also likely that many of these detainees will have serious medical needs.[23] For these reasons, Plaintiff satisfies the first factor of the deliberate indifference standard, that is, municipal policymakers would know

---

[23] A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir.1987) (internal quotation marks and citations omitted). In the TAC, Plaintiff proffers new evidence to establish that Plaintiff had he had a serious medical need. (<u>See</u> Doc. No. 32.)

that its police officers and prison employees will confront a situation where detainees need urgent medical attention.

Second, Plaintiff presents a plausible argument that this type of situation—where a detainee has a serious medical need and may need attention—presents a difficult choice for prison employees and police officers.  See e.g., Davis 284 F. Supp. 3d at 755–56.  Determining when to provide medical care to those with serious medical needs creates a difficult choice for police officers and prison employees because they are not doctors and do not have experience in handling people with serious medical needs. This situation, however, would be far less difficult if prison employees and police officers had proper training or supervision in these situations.  See id.

Third, Plaintiff adequately asserts that the wrong choice by a prison official and police officer could frequently cause a violation of the Fourteenth Amendment substantive due process clause.  Here, the wrong choice—failure to provide adequate medical care—could frequently cause a Fourteenth Amendment violation.  Moreover, because it is a significant part of the duties of police officers and prison employees to arrest and transport detainees with serious medical needs, they are frequently confronted with the opportunity to make a wrong decision that could result in a violation of a constitutional rights.  See Gregory v. City of Louisville, 444 F.3d 725, 754 (6th Cir. 2006) ("[E]vidence pointing to a City's failure to provide any training on key duties with direct impact on constitutional rights of citizens is sufficient to survive summary judgment with a Monell failure to train claim.") (citation omitted); see also Thomas v. City of Philadelphia, No. CV 17-4196, 2019 WL 4039575, at *22 (E.D. Pa. Aug. 27, 2019).  Therefore, based on the frequent occurrence of these types of situations, there is a high likelihood that they will reoccur and a police officer or prison official lacking specific tools to recognize and handle them will continue to violate citizens' rights.

Defendant argues, however, that Plaintiff's failure to train claim must fail because he alleges no facts regarding prior instances of police misconduct caused by allegedly inadequate training.  (Doc. No. 34.)  Although it is true that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim under Monell, the need for training in a given situation may be "so obvious" that failure to do so amounts to an unconstitutional policy "even without a pattern of constitutional violations."  Davis, 284 F. Supp. 3d at 756; see also Thomas v. Cumberland Cty., 749 F.3d 217, 223 (3d Cir. 2014).

Here, based on the facts alleged in the TAC, the need to train police officers and prison officials can be considered "so obvious" that the failure to do so amounts to deliberate indifference. In light of the duties assigned to Philadelphia police officers and prison employees who regularly transport and detain prisoners with serious medical conditions, Plaintiff presents a cognizable argument that there is a need for more or different training regarding when to seek medical assistance for a detainee with a serious medical condition.  Although Plaintiff does not identify a specific municipal policymaker, based on the strength of the allegations in the TAC, an inference may be made that policymakers did not train the officers or prison officials on how to provide medical care to someone in Plaintiff's position.  See e.g., Natale, 318 F.3d at 584 (stating that where the "need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.")

In this instance, like in Davis, the abundance of facts in the TAC creates an inference that the policymakers' inaction—failing to train police officers and prison officials—resulted in a deliberate indifference to Plaintiff's need for medical attention.  Accordingly, Plaintiff second claim establishes municipal liability under § 1983.

     c.  <u>Plaintiff's Third Claim</u>:  The City of Philadelphia is Deliberately Indifferent to the Need to Implement Procedures to Address the Serious Medical Needs of Persons Detained by Police Officers and Prison Employees

Third, Plaintiff's final claim is that the City of Philadelphia acted with deliberate indifference to the need to implement procedures to address the serious medical needs of persons detained by police officers and prison employees.  Deliberate indifference is a subjective standard of liability consistent with recklessness as that term is defined in criminal law.  <u>Natale</u>, 318 F.3d at 582.  "In situations involving claims for inadequate medical care, [courts] have found deliberate indifference in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence."  <u>See id.</u> at 582;  <u>see also</u> <u>Nicini v. Morra</u>, 212 F.3d 798 at 815 n. 14 (3d Cir. 2000).

A municipality can be held liable when there is a failure to establish a policy or procedure to address the immediate need of inmates with serious medical conditions such that it creates a risk that is "sufficiently obvious as to constitute deliberate indifference to those inmates medical need." <u>Natale</u>, 318 F.3d at 584.  As explained by the Third Circuit in <u>Natale</u>:

> ...When a policymaker has failed to act affirmatively at all, though the need to take some action to control agents of government is so obvious, and inadequacy of existing practice so likely to result in violation of constitutional rights, that policymaker can reasonably be said to have been deliberately indifferent to the need.

<u>Id.</u>

In <u>Natale</u>, plaintiff, a diabetic pre-trial detainee, brought a § 1983 claim against the county and prison health services for failing to administer insulin during his first 72 hours of detention. <u>Id.</u> at 584.  Natale pled <u>Monell</u> liability based on the Camden County Correctional Facility's "failure to establish a policy to address the medication needs of inmates during the first 72 hours of incarceration."  <u>Id.</u>  The Camden County Correctional Facility filed for summary judgment. The court denied it, reasoning that:

> [T]here is no evidence that [Prison Health Services] had an affirmative policy or
> custom that prevented its employees from inquiring into the frequency with which
> Natale required insulin. There is, however, evidence that PHS turned a blind eye to
> an obviously inadequate practice that was likely to result in the violation of
> constitutional rights...

Id.; see also Davis, 284 F. Supp. 3d at 754–55.

Similarly, in this case, there is no evidence that the City of Philadelphia had an affirmative policy or custom that prevented its employees from providing medical care to detainees with serious medical conditions. There is, however, evidence that Plaintiff had a serious medical need and a blind eye was turned to this situation.

In the TAC, Plaintiff asserts that while he was detained at CFCF he was "incoherent, experience[d] frequent falls, and was inconti[n]ent." (Id. at 9.)  Moreover, new medical records show that when Plaintiff was admitted to the hospital, Plaintiff was so disoriented that he was unable to communicate and was deemed too incoherent to consent to his own surgery.  (Id.) Specifically, Plaintiff could "not displa[y] capacity to consent" to his medical treatment and showed signs of "neurologic deterioration."  (Id. at 65-66.)  Even more, Plaintiff alleges that his need for surgery was so obvious and was such "an emergency" that "the doctors at the hospital proceeded even though they recognized that [Plaintiff] was incompetent to consent."  (Id. at 9.) Given this information, there is objective evidence alleged by Plaintiff shows that he had a serious medical need.

Moreover, there are allegations in the TAC showing that prison officials ignored evidence of Plaintiff's serious medical.  As noted, Plaintiff asserts that he exhibited obvious physical symptoms during his arrest and detainment. Plaintiff's medical symptoms were so obvious that a lay person would easily recognize the need for medical care.  In the TAC, Plaintiff asserts that while he was detained at CFCF he was "incoherent, experience[d] frequent falls, and was

34

inconti[n]ent." (Doc. No. 32 at 9.)  In addition, new medical records show that when Plaintiff was admitted to the hospital, Plaintiff was so disoriented that he was unable to communicate and was deemed too incoherent to consent to his own surgery.  (Id.)  Specifically, Plaintiff could "not displa[y] capacity to consent" to his medical treatment and showed signs of "neurologic deterioration." (Id. at 65-66.)  Even more, Plaintiff alleges that the need for surgery was so obvious and was such "an emergency" that "the doctors at the hospital proceeded even though they recognized that [Plaintiff] was incompetent to consent." (Id. at 9.)

In addition to observing obvious medical symptoms, Defendant Judge and prison officials had access to the results of Plaintiff's negative alcohol blood test, but "failed to release him once they knew or should have known the results of the blood test." (Doc. No. 32.)  Moreover, four days after Plaintiff was incarcerated at CFCF he was transferred to the Aria Torresdale Hospital, where he was diagnosed with a grade II Astrocytoma, which is a malignant brain tumor. (Id. ¶ ¶ 31-32.)  Plaintiff states that "even after [Plaintiff] had surgery for his brain tumor and after the City and [prison] officials knew or should have known that there was no basis for the criminal charges, the City ignored the doctors' treatment recommendations of [Plaintiff] and instead continued to detain him at CFCF[.]" (Id.)  Based on this information, it is plausible that City employees were aware of the severity of Plaintiff's medical condition but turned a blind eye to it which resulted in a violation of Plaintiff's Fourteenth Amendment rights.

Therefore, based on the evidence asserted in the TAC, employees of the City who came in contact with Plaintiff were on notice that he had a serious medical condition, but still failed to provide medical attention.  Given these facts and viewing them in the light most favorable to Plaintiff, it should have been obvious that even a lay person should have recognized his need for medical attention.

Based on this information involving Plaintiff's serious medical condition, which was ignored, it is obvious that a valid claim can be made that the City had no affirmative or adequate policy or custom regarding medical care for detainees.  Although Plaintiff does not identify a specific a municipal policymaker, based on the strength of the allegations in the TAC, an inference arises that policymakers did not create a sufficient procedure to follow on how to provide medical care to detainees.  As in Natale and Davis, the facts in this case create an inference that the policymakers' inaction on proper procedures amounted to deliberate indifference.  Moreover, the strength of the allegations in the TAC gives rise to an inference that the City turned a blind eye to this inadequate practice.  Accordingly, in viewing the allegations in the light most favorable to Plaintiff, his third claim establishes municipal liability under § 1983.

For all these reasons, the Court will reverse its decision dismissing Count V in the Opinion and Order dated March 6, 2019 (Doc. No. 19) and will reinstate the City as a defendant in Count V of the TAC.

C.     Prejudice to Defendant

The third and final factor the Court considers is whether granting leave to amend would be prejudicial to Defendant.  The issue of prejudice focuses on the hardship to the defendants if the Court grants the amendment.  In re Prithvi Catalytic, Inc., 557 B.R. 403, 409 (Bankr. W.D. Pa. 2016).  To state a cognizable claim of prejudice, the defendant must establish that it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered" had the allegations in the amended complaint been timely made.  Pegasus Int'l, Inc. v. Crescent Mfg. Co., No. Civ.A.06–2943, 2007 WL 1030457, at *5 (E.D.Pa. Apr. 2, 2007); see also Synthes, Inc., 281 F.R.D. at 228.

Defendants argue that granting leave to amend would be prejudicial to them because arguments on the legality of the arrests, extended detention, and delay in medical care were already made in July 2019, three months before Plaintiff filed the TAC.  The effect of the delay, however, as asserted by the Defendants, is unclear.  Delay, without more, "does not require that a motion to amend a complaint be denied."  AirProd. & Chemicals, Inc. v. Eaton Metal Prod. Co., 256 F. Supp. 2d 329, 332 (E.D. Pa. 2003).  Defendants have not cited any hardship that will impair their ability to prepare and try this case.  Defendant Judge remains employed by the City.  Defendants still have their evidence surrounding the incident.  Further, the Court will afford the parties the opportunity to fully investigate and defend against any new facts asserted by allowing additionally discovery.  Moreover, because Defendants have not offered sufficient evidence to show that they will be prejudiced by allowing a TAC to be filed and although the City will be reinstated as a Defendant which the Court recognizes is some evidence of prejudice, albeit not enough to constitute hardship under the law, the City will not be unfairly disadvantaged.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend/Correct [the Second] Amended Complaint or For Leave to File Third Amended Complaint ("TAC") (Doc. No. 32) will be granted.  Plaintiff will be afforded the opportunity to file a new TAC containing all the facts noted in this Opinion.  Plaintiff will be required to file this new Complaint within thirty (30) days of the date of the Order entered with this Opinion.  If either party needs additional time to engage in fact discovery, a request should be filed on the record and it will be granted.  Moreover, viewing the facts alleged in the TAC in the light most favorable to Plaintiff, there was no probable to arrest him

for the three offenses.  For this reason, Defendant Judge's Motion for Judgment on the Pleadings will be denied.[24]  An appropriate Order follows.

---

[24]  Plaintiff's counsel, Thomas R. Hurd, Esquire, stated at the hearing held on January 24, 2020 that Plaintiff would dismiss the related action before this Court, E.D. PA. Civil Action No. 19-3655, if the Court granted the Motion to Amend/Correct [the Second] Amended Complaint or For Leave to File Third Amended Complaint ("TAC").  Since the Motion is being granted and Plaintiff is being afforded the opportunity to file a new TAC, the second civil action is rendered moot and should be dismissed.